UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


YVETTE STOKES,

                    Plaintiff,

v.
                                                    Case No. 05-71683
XEROX CORPORATION,                                  Honorable Julian Abele Cook, Jr.

                    Defendant.


                              ORDER

        On April 28, 2005, the Plaintiff, Yvette Stokes ("Stokes"), filed a complaint in which she

accused the Defendant, Xerox Corporation ("Xerox"), of violating her civil rights under Title

VII, 42 U.S.C. § 2000(e), *et seq*., and Mich.Comp. Laws § 37.2101, *et seq*.  Essentially, it is her

contention that she  –  as an African-American woman  –  was wrongfully terminated by Xerox

and treated substantively differently than another similarly situated worker for reasons of race

and/or gender.  The parties in this case have filed fifteen motions in limine, all of which will be

examined by the Court seriatim.

I.       Xerox's Motion in Limine To Exclude Evidence Regarding Andre Dortch and Jennifer
         Allen's Own Claims of Discrimination and their Opinions Regarding Discrimination
         Directed Toward Stokes [Docket 88/116/125]

        In this motion, Xerox seeks to exclude the admission of any evidence or testimony from

two  former Xerox employees, Andre Dortch and Jennifer Allen, both of whom are expected to

proffer their opinions regarding alleged preferential treatment that was given to white male

                                    1

employees, as well as their personal beliefs which would presumably support Stokes' claims of discriminatory conduct by their former employer. Xerox has also asked the Court to exclude of the testimonies of John Lyon ("Lyon"), Pamela L. Gray ("Gray"), Sandra Dillon ("Dillon"), Mark Trawczyinski ("Trawczyinski"), and Tracy Abbott ("Abbott") because it believes that their statements will be used solely to bolster the contentions of Jennifer Allen, a non-plaintiff in this lawsuit. Xerox claims that any such evidence from these witnesses would be lay testimony, irrelevant, unfairly prejudicial, and proffered without their personal knowledge, all of which should be excluded under Federal Rules of Evidence 401,[1] 402,[2] 403,[3] 602,[4] and 701.[5]

In her opposition papers, Stokes submits that she needs the testimony of these witnesses

---

[1]Fed. R. Evid. 401 states the following: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2]Fed. R. Evid. 402 states the following: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

[3]Fed. R. Evid. 403 states the following: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[4]Fed. R. Evid. 602 states the following: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses."

[5]Fed R. Evid. 701 states the following: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

to prove her claim of discrimination against Xerox.  Specifically, she contends that Steven Katz ("Katz"), a sales manager with  the Southfield Great Lakes Public Sector Organization ("GLPSO"), had engaged in a pattern of discrimination when he caused three minority employees to be terminated while hiring a white male employee, Donald DeLabbio, who had been approved at an earlier time for an involuntary termination by Xerox.  It is also Stokes' position that Xerox allowed Katz to engage in this discriminatory conduct with no effective oversight, which demonstrates to her that it had not made any good faith efforts to enforce the provisions of Title VII within the operation of the GLPSO.  Furthermore, she submits that the testimonies of these six witnesses (to wit, Lyon, Dortch, Allen, Gray, Fillon, Trawczyinski, and Abbott) are necessary in order to provide the jury with evidence of Katz's disparate treatment of women and minorities.

After carefully reviewing the parties' briefs on this issue, the Court will grant the Xerox's motion in part and deny it in part, as follows: (1)  Dortch and Allen may not proffer testimony which is designed to support their allegations of discrimination against them by the Company. The Court believes that this testimony may lead to a confusion of the issues and any probative value would be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403; (2) Dortch and Allen may testify regarding any facts that specifically relate to Stokes' claims of discrimination, including Katz's alleged practice of disparate treatment of women and African American employees, as well as his alleged preferential treatment of white male employees because this testimony may provide indirect evidence of discriminatory intent. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564; and (3) To the extent that any testimony by any of these challenged witnesses is to be used to bolster Allen's claims of discrimination

against her, as a non-plaintiff, it is excluded. On the other hand, these witnesses may testify regarding allegations of Katz's disparate treatment of women and minorities, to the extent that this testimony is relevant to Stokes' claims of discrimination.

II.  <u>Xerox's Motion in Limine to Exclude Hearsay Testimony from Jennifer Allen</u> [Docket 89/120/131]

In this motion, Xerox seeks to prevent Jennifer Allen ("Allen") from testifying as to what other persons may have said to her about Katz. It is Xerox's belief that such evidence and testimony should be excluded under (1) Fed. R. Evid. 802,[6] because it is hearsay, (2) Fed. R. Evid. 402 because it is not relevant to the issues in this case, and (3) Fed. R. Evid. 403 because any possible probative value of the evidence is substantially outweighed by the danger of unfair prejudice, an improper confusion of the issues, and the probability of misleading the jury. Xerox is specifically concerned about testimony that it attributes to the projected testimony from Allen concerning alleged statements by Pamela Gray ("Gray"), John Lyon ("Lyon"), Mark Trawczyinski ("Trawczyinski"), and Sandra Fillon ("Fillon").

<u>Gray's Alleged Statements</u>

Xerox seeks to exclude Gray's alleged statement to Allen (i.e., she believes that Katz is a "chauvinist") because it is hearsay. Stokes, in her reply, concedes that Gray's statements are hearsay, as the Court had previously ruled on this issue.[7] Since Stokes concedes that Gray's

---

[6]Fed. R. Evid 802 states the following: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

[7]Stokes notes that Xerox, through its defense counsel, failed to comply with E.D. Mich LR 7.1 and did not seek her counsel's concurrence in this motion. Furthermore, Stokes asserts that if such a request had been made, she would have concurred with this motion.

statements are hearsay without the demonstration of any exception to Fed. R. Evid. 802, her alleged statements to Allen are excluded.

Lyon's Alleged Statements

In its motion, Xerox has asked the Court to exclude Allen's assertion (namely, that Lyon "told" her that (1) she had "sold more machines to MSU" and (2) he "could not imagine what [Allen] could do if [she] had a manager who covered [her] back") because it is hearsay under Fed. R. Evid. 802.

Stokes claims that Lyon's statement will be proffered only to demonstrate Katz's lack of support for Allen. The Court agrees with the arguments by Xerox and, will, therefore, grant its request to the exclude his statements to Jennifer Allen.

Trawczyinski Alleged Statements

It is Xerox's contention that any testimony from Allen who would assert that Trawczyinski had been placed on a performance improvement plan through a "blind copy," should be excluded because it is "undisputed that she did not have any access to personnel files." Thus, Xerox argues that any such testimony by Allen is inadmissible under Fed. R. Evid. 802 because it could have only been based on an out-of-court statement from an unnamed declarant.

Stokes anticipates that Allen will testify that she learned of the performance improvement plan directly from Trawczyinski prior to her termination in 2002. Under this circumstance, she submits that his statement should be admitted under Fed. R. Evid. 801(d)(2)(D) as an admission by a party-opponent.[8] Xerox counters by maintaining that Trawczyinski's statement is

---

[8]Fed. R. Evid. 801(d)(2)(D) states the following: "The statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . ."

inadmissible because his statement did not pertain to a matter within the scope of his employment, citing *Liadis v. Sears, Roebuck and Co.,* 47 Fed. Appx. 295, 303; 2002 WL 31085158, which holds that "[s]tatements by employees are outside of the scope of an employee's employment, and therefore not subject to the party-admission rule, when they concern decisionmaking processes into which the employee has no input, or decisions to which they were not a party." The Court agrees that the alleged statement by Trawczyinski to Allen is not a party admission under Fed. R. Evid 801(d)(2)(D). Hence, the Court will grant Xerox's request that his statement be excluded because Stokes has failed to demonstrate that Trawczyinski had any input regarding the decision to place him on a performance improvement plan.

Fillon Alleged Statements

Xerox seeks to exclude any statement to Allen regarding the assignment of credit to Greg Mohr, believing that such information would directly derive from hearsay statements by "Sandra Fillon or someone else." Stokes asserts that Allen will testify that Fillon told her that Katz ordered her to book Allen's orders under Mohr's identification so that he would get credit for her orders. She argues that this statement - just like the situation involving Trawczyinski - constitutes a party admission pursuant to Fed. R. Evid. 801(d)(2)(D). For the same reasons which have been stated above relative to the situation involving Trawczyinski, the Court does not believe that Fillon's[9] statement constitutes a party admission. Therefore, Xerox's request that her statement be excluded is granted.

---

[9]Stokes has not challenged Xerox's assertion that Fillon, as an order processor, was not a decision-maker with regard to the identity of person who receives credit for a sales order.

III.  <u>Xerox's Motion in Limine to Exclude Testimony from Laurence Crockett Regarding a</u>
      <u>"Conspiracy Theory" and the Circumstances of His Employment</u> [Docket 90/119/133]

      Xerox seeks to prevent Stokes from introducing testimony from Laurence Crockett

("Crockett") regarding (1) an alleged "conspiracy theory" against African American employees

within Xerox, (2) his opinion regarding the reasons for the assignment of African American

employees to the GLPSO, and (3) the circumstances of his own employment.  Xerox claims that

Crockett's potential testimony "has no basis in fact, is irrelevant and poses substantial danger of

unfair prejudice, confusion of the issues and misleading the jury."

      Stokes asserts that she has no intention of introducing evidence at trial which is designed

to establish "why, how, or for what purpose the GLPSO was created – from Crockett or anybody

else."  Stokes also states that she does not intend to proffer any evidence that the GLPSO was

created in order to limit the professional progress of African Americans.  Rather, Stokes asserts

that she seeks to present evidence regarding Crockett's own employment with Xerox, as well as

his own observations while working for the Company.  Xerox, using arguments that are similar

to those that were made in its prior motion in limine regarding the exclusion of evidence from

Dortch and Allen, also seeks to preclude Crockett from testifying as to the circumstances of his

own employment.

      The Court grants Xerox's motion in part and denies it in part.  Because Stokes does not

oppose Xerox's request to prevent Crockett from (1) testifying regarding an alleged "conspiracy

theory" against African American employees within Xerox and (2)  expressing an opinion

regarding the reasons for the assignment of African American employees to the GLPSO, Xerox's

request for relief on these two issues is granted.  Similar to the analysis by the Court regarding

the "Dortch and Allen" motion in limine, the Court imposes the following restrictions on

Crockett's testimony: (1) he may not testify regarding his personal allegations of discrimination by the Company because this testimony may lead to a confusion of the issues and any potential probative value may be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403; and (2) he may testify regarding any facts which specifically relate to Stokes' claims of discrimination, including Katz's alleged (a) practice of disparate treatment of women and African American employees and (b) preferential treatment of white male employees.

IV.  Xerox's Motion in Limine to Exclude Hearsay Evidence of Alleged Retaliation [Docket 91/118/128]

In this motion, Xerox seeks to prevent Stokes from introducing evidence which is designed to establish that other employees were subjected to acts of retaliation when they complained of perceived discrimination.  Xerox anticipates that Stokes and an expert witness, Dr. Rosalind Griffin ("Dr. Griffin"), will attempt to introduce evidence that Stokes never complained to management because other fellow employees had warned her against taking such an action out of a fear of retaliation.  In Xerox's view, this "retaliatory"evidence by Stokes is being offered to prove the truth of the matter asserted which warrants its exclusion under Fed. R. Evid. 801(c).[10]  Moreover, Xerox maintains that Dr. Griffin's testimony, as well as her report, contain "prejudicial hearsay within hearsay" which should serve as a basis for exclusion under Fed. R. Evid. 703,[11] 802, and 805.[12]  Finally, Xerox contends that these projected out-of-court

_____

[10]Fed. R. Evid. 801(c) states the following: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[11]Fed. R. Evid. 703 states the following: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order

statements regarding retaliation are irrelevant under Fed. R. Evid. 401 because she is pursuing a claim of discrimination - not retaliation or harassment.

Stokes argues that Xerox's fear is without any merit. She asserts that such testimony "is either [her] own statements describing her fear, or statements proffered to show the basis for [her] fears, not to prove that other employees at Xerox were retaliated against" and, thus, such testimony is not hearsay. Moreover, she insists that, in so far as Dr. Griffin's testimony will be proffered to rebut Xerox's inference of improper motive, her testimony is not hearsay and is admissible pursuant to Fed. R. Evid 801(d)(1)(B).[13]

The Court grants Xerox's request to exclude hearsay evidence relating to claims of retaliation because it is not relevant to Stokes' claim of discrimination. Fed. R. Evid. 401. However, should Xerox "open the door" by introducing evidence at trial regarding Stoke' failure to complain about the claimed acts of discrimination by Xerox, the Court will permit rebuttal evidence by Stokes to establish the basis for her fear of reporting discrimination.

V.     Xerox's Motion in Limine to Exclude Evidence of a Single Event that Occurred Prior to the Applicable Limitations Period [Docket 92/117/124]

---

for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

[12]Fed. R. Evid. 805 states the following: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

[13]Fed. R. Evid. 801(d)(1)(B) states the following: "A statement is not hearsay if (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . ."

In this motion, Xerox moves to prevent Stokes from introducing evidence of an event (namely, that she was denied an opportunity to interview for a position outside of the GLPSO in May 2000).[14]  Xerox claims that "any evidence Plaintiff can offer [regarding an allegedly cancelled interview opportunity in another office] is sheer speculation" and should be barred by Fed. R. Evid. 602.  Xerox further claims that this evidence is irrelevant and unfairly prejudicial.  However, Stokes claims that she has proffered evidence of a pattern and practice of disparate treatment of African Americans and women within the GLPSO and Xerox and that her opportunity to interview for a "position in Health Care, a major account division," was canceled by her manager without any explanation.  Stokes also points out that other African American employees were denied opportunities outside of the GLPSO.  Xerox refutes this by pointing out that Stokes gave no evidence in her deposition that she had been subjected to unlawful acts of discrimination on the basis of race or gender, other than a belief that her manager at the time "held me back."  Xerox further submits that under *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977), it is entitled to treat that past act as being lawful because Stokes failed to timely pursue her claim on the basis of the alleged cancellation of the interview.  While *United* states that time-barred evidence "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue," the facts in this case are inapposite.  *Id.*  Here, the supervisor who allegedly denied Stokes an opportunity to participate in the interview was not working in the GLPSO at the time of her dismissal.  Stokes' allegation of discriminatory treatment is premised on a claim that she had been wrongfully selected for the termination of her

_____

[14]It is not disputed that this alleged event took place outside of the applicable limitations period.

10

employment because of the discriminatory conduct by Katz.

Therefore, the Court grants Xerox's motion in limine because (1) the act, about which she complains, is time-barred under the *United* standard, and (2) any probative value of this evidence is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.

VI.    Xerox's Motion in Limine To Exclude Evidence of Stokes' EEOC Investigation File
       [Docket 93/113/122]

       In this motion, Xerox seeks to exclude Stokes from introducing documents from her

Equal Opportunity Employment Opportunity Commission ("EEOC") investigation file.  Xerox

argues that this evidence should be excluded because (1) Stokes falsely accused her employer of

hiding information from the EEOC investigator, and (2) the evidence does not have any

probative value, and it is likely to confuse the issues, mislead the jury, and cause an undue delay

in these judicial proceedings, by a needless presentation of cumulative evidence under Fed. R.

Evid. 403.  Xerox also submit s that Stokes' use of documents from the EEOC investigation file

"will distract the jury from the real issue – whether Plaintiff can produce sufficient evidence of

intentional discrimination by Xerox at the time she was discharged."

       In addressing this claimed proffer of evidence, Stokes claims that she does not seek to

introduce the entire EEOC investigation file and agrees with Xerox that any findings, reports, or

letters of determination which were authored by the EEOC are inadmissible.  However, Stokes

does seek to introduce at trial "evidence of [Xerox's] own statements made and documents

submitted to the EEOC which are partial, misleading, and false."

       The Court denies Xerox's request to exclude all evidence from Stokes' EEOC

investigation file.  The Court believes that the representations by Xerox to the EEOC regarding

Stokes and other employees are relevant evidence under Fed. R. Evid. 401.  Moreover, Xerox

has not satisfied the Court that this evidence will be unfairly prejudicial to its defense.

VII.    Xerox's Motion in Limine to Exclude Evidence Regarding the Formation of the Great Lakes Public Sector Organization [Docket 94/ 110/ 130]

Xerox seeks to "prevent [Stokes] from introducing speculative testimony regarding the formation of the Great Lakes Public Sector Organization ("GLPSO") and the assignment of employees to that organization."  Xerox claims that any evidence that Stokes can offer regarding this issue is either speculative or based on hearsay and therefore should be excluded under Fed. R. Evid. 602 and 802.

Stokes denies that she has any intention of introducing evidence at trial which will address the basis for the creation of the GLPSO.[15]  However, Stokes does acknowledge that she intends to seek to proffer evidence that will be based on the testimony of Laurence Crockett ("Crockett") and other witnesses regarding (1) the racial composition of the GLPSO, (2) the limited opportunities for advancement within the GLPSO organizational structure, (3) his assignment to the GLPSO against his wishes, (4) the comparative smaller size of his sales territory with that of non-minority employees, (5) the diminution of his compensation while in the GLPSO, and (6) his opinion that assignment of employees to the GLPSO was motivated by race.  The Court grants the Xerox's motion in part and denies it in part.  Stokes may not introduce testimony regarding the reasons, if known, for the formation of the GLPSO.[16]  As stated earlier, Crockett may not testify regarding his personal claims of discrimination by Xerox because it may lead to a confusion of the issues as well as the real possibility that any potential

---

[15]Counsel for Stokes notes that had Xerox's counsel complied with E.D. Mich. LR 7.1 and sought concurrence in this motion, Stokes would have informed them that they had no intention of introducing this evidence.

[16]Stokes does not oppose this part of Xerox's motion.

probative value would be substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. On the other hand, Crockett may testify regarding any facts that he may have which specifically relate to Stokes' claims of discrimination, including matters as the alleged practice of disparate treatment of women and African American employees, as well as those facts regarding the alleged preferential treatment of white male employees by Xerox.

VIII. Xerox's Motion in Limine to Strike Stokes' Claims for Punitive Damages and to Exclude all Evidence and References to Such Damages [Docket 95/ 111/ 129]

Xerox claims in its motion that "(a)s a matter of law, punitive damages cannot be awarded under Title VII on the record before the Court." Thus, Xerox has asked the Court to enter an order that will (1) strike Stokes' claims for punitive damages, (2) preclude her from introducing evidence that is designed to support her claim for punitive damages, and (3) instruct her to refrain from making reference to punitive damages during any communications with the jury (e.g., *voir dire*, opening statement, closing argument, and presentation of evidence).

In her response, Stokes submits that this motion by Xerox is, in reality, an untimely request for the entry of a summary judgment, noting that the final deadline for the filing of petitions for dispositive relief was December 1, 2006. The Court agrees.

Under Fed. R. Civ. P. 56(c), summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Stokes cites *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir., 2000) for its summary judgment standard, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In its assessment of this motion, the Court concludes that Xerox has failed to establish that there is no genuine issue as to a material fact in

this case.

Because this is, in reality, an untimely motion for summary judgment, the Court must,

and does, deny Xerox's motion.

IX.     Xerox's Motion in Limine to Exclude Report and Testimony of Stokes' Economic Expert
        and Opinion of Unnamed Vocational Counselor [Docket 96/ 114/ 127]

In this motion, Xerox seeks to exclude (1) any evidence and/or opinion testimony from

Stokes' economic expert, B. Michael Grant ("Grant") as to post-discharge damages, and (2) the

"Vocational Opinion" of Guy Hostetler ("Hostetler"), as well as any other testimony which

relies upon this report.  Xerox claims that Grant's opinion is based on hearsay testimony of

Hostetler which was taken  from the "Vocational Opinion."  Moreover, Xerox contends that

Hostetler was not listed as an expert by Stokes,  his "Vocational Opinion" is "hearsay and is also

based on hearsay that is either contradicted by record evidence or based wholly on speculation,

with no foundation whatsoever."  Xerox also argues that Stokes should be precluded from

introducing opinion testimony from Grant which seeks to support her claim for post-discharge

damages pursuant to Fed. R. Evid. 703, contending that (1) his view point is based on the

hearsay opinion of an unnamed witness and (2) the Hostetler "Vocational Opinion" is based on

false and speculative hearsay.  Xerox also cites to a 2007 case in which the Sixth Circuit

reversed a jury verdict after the district court improperly allowed a plaintiff's expert to testify

regarding the opinion of a non-witness expert.  *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472

F.3d 398 (6th Cir. 2007).  The Sixth Circuit Court of Appeals, in reaching this conclusion, relied

upon *Taylor v. B. Heller & Co.,* 364 F.2d 608, 613 (6th Cir. 1966) which held that a district court

erred by admitting expert testimony which  was based "upon the opinion of others who were not

even qualified as experts nor present at the trial."  In her response to Xerox's motion, Stokes

claims that such broad exclusions – including the entire testimony of Stokes' economic expert –
are not appropriate and that Xerox has failed to provide any legal support for such a far-reaching
proposition.  She also argues that any deficiencies in Grant's testimony, his report, and
Hostetler's opinion "are more appropriately revealed through cross-examination than eliminated
through exclusion."  Stokes notes that Hostetler's opinion is only one of over a dozen sources of
information that Grant relied upon in writing his report.  Fed. R. Evid 702 allows expert opinion
testimony when it is "(1) based upon sufficient facts or data, (2) the testimony is the product of
reliable principles and methods, and (3) the witness has applied the principles and methods
reliably to the facts of the case."  Also, Fed. R. Evid. 703 states in part, that "(i)f of a type
reasonably relied upon by experts in the particular field in forming opinions or inference upon
the subject, the facts or data need not be admissible in evidence in order for the opinion or
inference to be admitted."  Furthermore, Xerox claims that under *Mike's Train House,* 472 F.3d
at 409, Grant's testimony should be excluded because the Sixth Circuit declared that a testifying
expert cannot be permitted to base his opinion on the opinions of others who were not qualified
and not present at trial.

Stokes insists that Grant will not offer his expert testimony to "vouch for the truth of
Hostetler's data, facts, or conclusions"  Rather, Stokes argues that he will  "simply [rely] on the
data and facts collected and processed by Hostetler as one of many bases to formulate his
damages calculations and opinion as to the economic damages suffered by Plaintiff."

The Court, after reviewing Hostetler and Grant's reports, believes that Hostetler's report
is the type of "opinion" the Sixth Circuit referred to in *Mike's Train House* and *Taylor*.  It would
be unfairly prejudicial to Xerox to allow the admission of this evidence without Xerox having

the opportunity to cross-examine Hostetler, whom Stokes does not intend to call as a witness in this trial.  However, because the Court believes that Xerox's motion to exclude Grant's entire report is overly broad, the Court grants Xerox's motion in part and denies it in part.  The Court grants Xerox's request to exclude any facts or data contained in the "Vocational Opinion" including the report.  On the other hand, the Court will deny Xerox's request to exclude Grant's opinion testimony as to post-discharge damages to the extent that his testimony and/ or report do not rely on Hostetler's report. If Grant's testimony does rely upon Hostetler's report, Xerox's request to exclude it is granted for the reasons stated above.

X.    <u>Xerox's Motion in Limine to Exclude "Good Old Boy Network" Evidence</u> [Docket 97/ 112/ 132]

In this motion in limine, Xerox seeks to prevent Stokes from introducing comments and evidence about an alleged "good old boy network" that existed at Xerox.  Xerox claims that such evidence and testimony is irrelevant, unfairly prejudicial and should be excluded under Fed. R. Evid 401 and 403.  Xerox notes that the Court had struck this evidence after concluding that it "contain[ed] conclusory assertions without any plausible foundation or evidentiary support." See  order of March 5, 2007 [Docket 62].  Stokes asserts in her opposition  brief to this motion by Xerox that the Court, within the same order,  indicated that she would  be allowed to proffer the evidence at any subsequent proceedings if a proper foundation could be established by her.

The Court, having carefully examined these arguments, does not believe that the use of an ambiguous term such as "good old boy network" would be more probative than prejudicial to Xerox.  Hence, the Court, acting upon the language from Fed. R. Evid. 403, grants Xerox's motion to exclude Stokes from introducing comments and evidence about an alleged "good old boys network" that allegedly existed at the Company during her tenure of employment.

17

XI.     <u>Xerox's Motion in Limine to Exclude Evidence of Front Pay</u> [Docket 98/ 115/ 126]

In this motion, Xerox seeks to exclude evidence of front pay damages, contending that front pay is an equitable remedy which must be resolved by the Court - not the jury.  Xerox submits that the issue of reinstatement is the presumptively favored equitable remedy in cases involving discriminatory discharge.  *Roush v. KFC Nat'l Management Co.,* 10 F.3d 392, 398 (6th Cir. 1993).  However, Xerox acknowledges that front pay can be substituted for the equitable remedy of reinstatement in appropriate circumstances.  *Reithmiller v. Blue Cross & Blue Shield,* 151 Mich. App. 188, 201 (1986).

Stokes, in her opposition papers, argues that (1) Xerox is asking the Court to find that there are no material disputed issues of fact which "would require submission of Plaintiff's front pay damages to the jury," and (2) this motion is, in reality, an untimely filed application for the entry of a summary judgment.  The Court agrees.  While Stokes concedes that an award for front pay damages is an issue for the Court to decide, she submits that Xerox seeks a summary resolution of a matter in which there is a disputed issue of fact.

Xerox's motion must be denied because (1) the issue relating to an award of front pay damages in this case contain material facts that are genuinely in dispute, and (2) it is, in reality, a formal application for the entry of a dispositive order which was filed after the entry of  the Court-imposed deadline.  The Court also denies Stokes' request to require Xerox to pay her costs and fees for having to defend against this motion.  The Court is not convinced, as Stokes has claimed, that Xerox filed its motion for the purpose of "harassing [her] and driving up costs in this matter."

XII.  <u>Xerox's Motion in Limine to Exclude Evidence and Testimony Regarding *Warren*</u>
<u>Lawsuit Against Xerox</u> [Docket 99/ 109 /123]

In this motion in limine, Xerox seeks to exclude evidence regarding a pending class

action lawsuit against it (i.e., the *"Warren* lawsuit"), citing Fed. R. Evid. 401, 402, 403, and 703

as the basis for its request.  Xerox also submits that the evidence of this *Warren* lawsuit is

inadmissible character evidence under Fed. R. Evid. 404(a).[17]

Stokes disagrees, contending that evidence of the *Warren* class action lawsuit is relevant

to her claims of entitlement to punitive damages.  Stokes also argues that Xerox "has proffered

voluminous evidence as to its alleged corporate character for diversity, affirmative action, and

non-discrimination, asserting that such evidence demonstrates its commitment to enforcing Title

VII.." Thus, it is her view that Stokes should be permitted to proffer evidence which displays

Xerox's character and its level of commitment to enforcing the provisions of Title VII.

The Court believes that evidence and testimony regarding the *Warren* lawsuit - standing

---

[17]Fed. R. Evid. 404(a) states the following: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of accused - In a criminal case, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if  evidence of  a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404 (a)(2),  evidence of the same  trait of character of the accused offered  by the prosecution;

(2) Character of alleged victim - In a criminal case, and subject to the limitations imposed by Rule 412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;

(3) Character of witness - Evidence of the character of a witness, as provided in rules 607, 608, and 609."

alone - would be more prejudicial than probative under Fed. R. Evid. 403 as it could confuse or mislead the jury and it is not directly related to Stokes' claim against Xerox. Therefore, the Court will grant Xerox's motion to exclude all evidence and testimony regarding the *Warren* lawsuit against Xerox. However, should Xerox "open the door" to this evidence by proffering evidence and/ or eliciting testimony regarding its nation-wide efforts at diversity and affirmative action, Stokes may seek to introduce evidence of the *Warren* lawsuit on rebuttal.

XIII.    <u>Stokes' Motion in Limine to Exclude All Evidence of Her Prior Litigation</u> [Docket 100/ 106/ 136]

In this motion, Stokes seeks to exclude all evidence of a lawsuit that she filed against the Metropolitan Detroit Convention and Visitors Bureau ("the MDCVB") where she worked from 1988 to 1994. It is her view that this evidence is not relevant under Fed. R. Evid. 401 and that any probative value it may have is outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury under Fed. R. Evid. 403. Stokes further contends that under Fed. R. Evid. 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." She also submits that, under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

In its response, Xerox claims that Stokes has a history of "distorted perceptions marked by a belief that she is the victim of persecution" and that this history is documented by her own expert witness, Dr. Rosalind Griffin ("Dr. Griffin"). Xerox asserts that Dr. Griffin's current evaluation is at odds with her evaluation of Stokes in 1995. Xerox argues that the only way to effectively impeach Griffin is through a "full cross-examination." It claims that if " Xerox is precluded from offering the factual support for the opinion that Dr. Griffin rendered in the

MDCVB lawsuit . . . then the prior opinion loses much of its force and the impeachment process is compromised."

The Court does not believe that Stokes' lawsuit against the MDCVB in 1995 is relevant to her current claim against Xerox. Furthermore, the Court agrees with Stokes that information relating to the earlier trial also constitutes evidence of (1) a person's character or trait under Fed. R. Evid. 404(a) and (2) a prior act under Fed. R. Evid. 404(b) which must be excluded. The Court believes that the admission of this evidence would produce a prejudice to Stokes which would outweigh any probative value in assisting the jury to resolve the contested issues in this case. Fed. R. Evid. 703. For the reasons stated above, the Court grants Stokes' motion to exclude all evidence of her prior litigation.

XIV.  <u>Stokes' Motion in Limine to Exclude All Evidence of Her Previous Employment</u> [Docket 101/ 107/ 135]

In this motion, Stokes seeks to exclude all evidence of her previous employment, which occurred approximately nine to nineteen years ago for two different employers, Express Personnel in 1993, 1995, 1996, and 1998 and the MDCVB from 1988 to 1994. She asserts that any such evidence would be (1) irrelevant under Fed. R. Evid. 401, (2) more prejudicial than probative under Fed. R. Evid. 403, and (3) inadmissible character evidence under Fed. R. Evid. 404. Stokes anticipates that Xerox will attempt to argue that Stokes falsified her application for an employment position with Xerox by stating that she had "voluntarily resigned" from the MDCVB. While she was initially discharged by the MDCVB, one of the conditions of a settlement of her lawsuit against the MDCVB was that her discharge status would be classified as a "voluntary resignation." In its opposition brief to this motion, Xerox contends that Stokes' employment with its Company was "predicated on a blatant misrepresentation." Moreover, it is

their assertion that Stokes' representation to Xerox that she had "resigned" from her position with the MDCVB was false when she had, in fact, been "summarily fired."

The Court does not believe it must address the merits, if any, of Xerox's contention that Stokes had engaged in "resume fraud." Therefore, the Court will grant Stokes' motion to exclude all evidence of her previous employment pursuant to Fed. R. Evid. 401 and 403. Her previous employment, which occurred most recently over nine years ago, is not relevant to her present claim against Xerox. Moreover, the Court notes that Xerox's stated reason for firing Stokes is poor sales performance - not resume fraud. Finally, even if evidence of Stokes' prior employment was relevant to her present claim against Xerox, any probative value would be greatly outweighed by the danger of unfair prejudice and confusion of the issues and would likely mislead the jury. Fed. R. Evid. 403.

XV.    Stokes' Motion in Limine to Exclude All MMPI Evidence and All Evidence as to Dr. Griffin's 1995 Evaluation and Report [Docket 102/ 108/ 134]

In this motion in limine, Stokes asks the Court to "exclude all MMPI[18] evidence and all evidence as to Dr. Griffin's 1995 evaluation and report pursuant to Fed. R. Evid. 702, 403, 404, and 608.[19]" Stokes also asks that a projected expert witness for Xerox, Dr. Charles Clark ("Dr.

---

[18]"MMPI" stands for the Minnesota Multiphasic Personality Inventory, a personality test widely used by mental health professionals.

[19]Fed. R. Evid. 608 states the following: "(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on

Clark"),  be precluded from using MMPI scale names, which she claims are "inaccurate and misleading" as well as other evidence from Dr. Clark that, in her view, neither applies specifically to Stokes[20] nor would assist the jury in assessing issues relating to credibility.

In her motion, Stokes acknowledges that she filed a lawsuit against the MDCVB on August 12, 1994 which was subsequently settled by the parties on August 7, 2006.  During the course of that litigation, Stokes was given a medical exam by the then-defense expert, Dr. Rosalind Griffin ("Dr. Griffin"), as well as a number of psychological tests by Edward Czarnecki, including an MMPI.  She was also given two MMPIs during the course of her current litigation against Xerox.  Stokes claims that all MMPI evidence should be excluded under Fed. R. Evid. 702 because these tests are not scientifically reliable and do not meet the standards of *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) or its progeny.

In *Daubert*, the Supreme Court set forth a number of factors which courts may consider in making an inquiry into the reliability of evidence under Fed. R. Evid 702, such as the following:

> (W)hether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested . . . . Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication.  Additionally, in the case of a particular scientific

---

cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.  The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters that relate only to character for truthfulness.

[20]Stokes claims that Clark's report contains general statements which do not apply to her.

technique, the court ordinarily should consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation . . . . Finally, general acceptance can yet have a bearing on the inquiry. A reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community. *Daubert*, U.S. at 593-94.

Stokes claims, *inter alia*, that the MMPI should not be admitted after evaluating the *Daubert* factors because "it is wrong roughly 40% of the time" citing one 1995 practitioner's guide, Jay Ziskin, *Coping with Psychiatric and Psychological Testimony,* 785-86, (5th ed. 1995). Stokes also cites a decision in 1994 which "denied defendant's request to conduct an MMPI on plaintiff because of the 'inadequacy of correlation factors and the validity factors' of the MMPI."[21] *Usher v. Lakewood Engineering & Mfg. Co.,* 158 F.R.D. 411, 413 (N.D. Ill., 1994).

Xerox opposes this motion, claiming that Dr. Griffin, who customarily relies upon the MMPI,[22] administered it to Stokes in 1995 and in 2007. Xerox also claims that the MMPI surpasses the *Daubert* standard and is regularly admitted in evidence. Furthermore, Xerox maintains that it needs to examine Griffin whose current opinion of Stokes is a "stark departure from her 1995 diagnosis."

Xerox claims that the MMPI "is the most widely used personality test in clinical practice in the U.S." Xerox points out that its expert, Dr. Clark, has declared that the articles which have

---

[21]Stokes selectively quotes from *Usher*. In the quote she selected here, the court is not addressing the MMPI alone. The full sentence reads: "In that respect Usher has adduced substantial information demonstrating the inadequacy of the correlation factors and the validity factors of all five of the tests in question." *Usher* 158 F.R.D. at 413.

[22]Xerox refers to the MMPI as the "MMPI-2." The MMPI-2 is an updated version of the MMPI (first published in 1942) that was released in 1989. For consistency, the Court will refer to the test as the MMPI.

been cited by Stokes which call the MMPI's validity into question are neither authoritative nor support the propositions for which they have been cited. Xerox then cites several cases including *Hirschheimer v. Associated Metals & Minerals Corp.,* 1995 WL 736901 *4 (S.D.N.Y. Dec. 12, 1995), *Bertaut v. U.S.*, 852 F. Supp. 523, 527 (E.D. La. 1994), and *United States v. Thomas*, 2006 WL 140558, *13 (D. Md. Jan. 13, 2006) in which courts have praised the MMPI for being "the most accepted psychological test" and "the most widely used and researched psychological test available."

The Court, having carefully considered the parties' arguments, grants in part and denies in part Stokes' motion. The Court grants Stokes' motion to exclude Dr. Griffin's 1995 evaluation and report pursuant to Fed. R. Evid. 401 and 403. The Court is not convinced that a report from 1995 is relevant to Stokes' current claim of employment discrimination, believing that any probative value it may have is greatly outweighed by the potential for unfair prejudice, confusion of the issues, and misleading the jury. However, the Court concludes that Xerox does have a right to attempt to impeach Dr. Griffin if she offers testimony which may contain an inconsistent statement or statements. Fed. R. Evid. 613.[23] Therefore, the Court denies Stokes' request to exclude the MMPI evidence that was gathered by Xerox in preparation for this trial. The Court has reviewed the cases that have been cited by Xerox and believes that, under

---

[23]Fed. R. Evid. 613 states the following: "(a) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

*Daubert*, "the MMPI consists of data that is reasonably relied upon by experts in psychiatry in forming opinions."[24]  Stokes' own expert, Dr. Griffin, agrees.  Stokes has not cited any case law nor other evidence which convinces the Court that the references to the MMPI should be excluded.  Nevertheless, the Court will grant Stokes' request that Dr. Clark be precluded from using the MMPI scale names, as it believes that these identifying labels are unfairly prejudicial (*e.g.,* hysteria, psychasthenia).  However, the Court will deny Stokes' request to exclude those comments by Clark which do not specifically apply to her. Stokes has not met her burden of proving that these anticipated statements (essentially, comparing Stokes' test results with other individuals who have tested similarly) should be excluded under Fed. R. Evid. 702.  Finally, the Court grants Stokes' motion, in which she seeks to exclude Clark from testifying regarding her credibility as this is an issue for the jury to evaluate and is not "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue" as provided for by Fed. R. Evid. 702.


IT IS SO ORDERED.

Dated: <u>January 28, 2008</u>                            <u>s/ Julian Abele Cook, Jr.</u>
       Detroit, Michigan                              JULIAN ABELE COOK, JR.
                                        United States District Court Judge

---

[24]This quote comes from Stokes' expert, Dr. Griffin, in a May 26, 2006 affidavit attached to Xerox's brief.

<u>Certificate of Service</u>

I hereby certify that on January 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I hand delivered a copy to all counsel of record on today's date.

<u>s/ Kay Alford</u>
Courtroom Deputy Clerk